IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JESSE RUSSELL SIMPSON,**

        **Petitioner,**

v.                                               **Civil Action No. 1:19cv68**
                                                         **(Judge Kleeh)**

**C. GOMEZ, Warden,**

        **Respondent.**

## PRELIMINARY REPORT AND RECOMMENDATION

On March 29, 2019, the *pro se* Petitioner, Jesse Russell Simpson ("Simpson"), an inmate then-incarcerated at FCI Morgantown in Morgantown,[1] West Virginia, initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner also filed a Motion for Leave to File Additional Pages and Grounds and to Prepare Exhibits for Petition for Writ of Habeas Corpus and a Motion for Preliminary injunction Granting Access to Legal Materials. ECF Nos. 2, 3. Attached to two of Petitioner's motions were cover letters containing a request for the Clerk to send copies of Court filings to his mother. ECF Nos. 2-3, 3-1. The Clerk of Court issued a Notice of Deficient Pleading, directing Petitioner to file a motion to proceed as a pauper with the necessary supporting documents, or pay the filing fee within twenty-one days. ECF No. 4. On April 18, 2019, Petitioner paid the filing fee. ECF No. 9. On May 13, 2019, by separate motions, Petitioner moved to file additional pages and grounds to his petition and "to return from leave" [ECF No. 12]; he also moved for another preliminary injunction. ECF No. 13. On June 26, 2019, Petitioner moved for an emergency injunction. ECF No. 14. On October 17, 2019, the undersigned directed the Respondent to show cause on the limited issue of whether

---

[1] Petitioner is presently incarcerated at FCI Loretto, in Cresson, PA.

Petitioner had ever lost any Good Conduct Time ("GCT") as a sanction for a disciplinary violation. ECF No. 16. On November 5, 2019, the Warden filed a response. ECF No. 18.

On November 6, 2019, Petitioner filed a Motion for Extension of Time to File Related Civil Action(s) and a Motion to Submit Additional Information.[2]  ECF Nos. 19, 20. By separate Orders, entered November 8, 2019, Petitioner's Motion for Extension of Time to File Related Civil Action(s) was denied; his Motion to Submit Additional Information was construed as a motion to supplement and granted, and the Clerk was directed to redocket it as an attachment to the petition; his Motion for Leave to File Additional Pages and Grounds and to Prepare Exhibits for Petition for Writ of Habeas Corpus was construed as a motion for leave to file excess pages and granted; and his letter motions to have copies of Court filings sent to his mother were denied. ECF Nos. 21, 22, 24, 25.

This case is before the Court for an initial review and R&R, pursuant to LR PL P 2.

**I. Facts**

Petitioner is currently serving a 33-month sentence, imposed on April 20, 2016 in the Northern District of Georgia in Case No. 1:16cr348-1, after he pled guilty to Count Five of a 5-count indictment, importing/manufacturing firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D),  and a concurrent 50-month sentence imposed on June 13, 2017, in the Eastern District of Michigan, in Case No. 4:16cr20514-3, after he pled guilty there pursuant to a written plea agreement, to Count Nine of a superseding indictment, transport of an unregistered firearm in interstate commerce, in violation of 26 U.S.C. §§ 5841, 5861(j), and 587.

Petitioner did not file direct appeals of either conviction, nor did he file any motions to collaterally attack those convictions or sentences.

---

[2] Attached to Petitioner's Motion to Submit Additional Information is a duplicate copy of the Motion for Extension of Time to File Related Civil Action(s). See ECF Nos. 19, 20-1.

According to the BOP's website, Petitioner's current projected release date is March 27, 2021.

## II. Claims of the Petition

Petitioner raises his claims in a hand-printed petition with an attached rambling, repetitive, hand-printed, single-spaced memorandum in support. Petitioner's claims, some of which have been re-ordered for clarity, appear to assert the following grounds for relief:

**Ground 1**: In the spring of 2018, while incarcerated at FCI Danbury, in Danbury, Connecticut, Petitioner joined a music program band comprised primarily of LGBT[3] inmates. After Petitioner joined and revealed that he identified as LGBT, certain Bureau of Prisons ("BOP") employees retaliated against him in numerous ways for exercising his First, Fifth, and Eight Amendment rights. More specifically, Petitioner alleges that FCI Danbury staff accused him of participating in sexual "orgies;" targeted him for frequent pat-downs, locker searches, and non-policy "contraband" confiscations; publicly maligned him; confiscated his stamps and refused to return them; stopped paying him for his work as a compound orderly; falsely accused him of various violations; left his locker unlocked after a search, permitting $150 worth of commissary items to be stolen; cursed at him; called him a "fag;" refused him meals; subjected him to "random" drug and alcohol tests; threatened to place him in the Special Housing Unit ("SHU"); and finally did place him in the SHU, confiscating all his personal property, including his clothing, and never returning it, and housing him there in an unsanitary cell devoid of any hygiene products or even a pen or paper; and finally, transferring him to another facility. Further, he alleges that FCI Danbury staff repeatedly chastised and harassed him for filing so many grievances and attempted to interfere with the filing of them, thereby restricting his access to the courts. He contends his grievances were all denied. ECF No. 1 at 5, see also ECF No. 1-1 at 1 – 4 and 6 – 7

**Ground 2**: On September 25, 2018, after Petitioner arrived at the BOP's Oklahoma Transfer Center ("OKTC") in Oklahoma City, Oklahoma, BOP employees there retaliated against him for exercising his First, Fifth, and Eighth Amendment rights by denying him a lower bunk, despite the fact that he had a medical pass for one; refusing to issue him a pillow for over a week; interfering with his right to file grievances by delaying their acceptance, not providing responses, and refusing to issue forms. ECF No. 1 at 6; see also ECF No. 1-1 at 5.

**Ground 3**: On or about October 23, 2018, when Petitioner arrived at FCI Morgantown, he filed requests to staff, and a formal request, seeking to proceed without informal resolution on the OKTC claims, but received contradictory information denying his request. He produced TRULINCS emails printed at OKTC attached as continuation pages for the original informal resolutions, but staff refused to issue administrative remedy forms for them. This was addressed in Grievance Nos. 964498-F1 and 964498-R1 (both denied). ECF No. 1-1 at 5. The FCI

---

[3] "LGBT" refers to lesbian, gay, bisexual, and/or transgender people. See LGBT Rights, *available at*: < https://www.aclu.org/issues/lgbt-rights >

Morgantown BOP staff retaliated against him for exercising his First Amendment rights by harassing him for telling people he was LGBT and broadcasting his religious beliefs and for complaining about their actions by filing grievances, and confiscating his religious paraphernalia. FCI Morgantown staff also violated his Fifth Amendment rights by seizing certain personal property without cause and not returning it or permitting it to be sent to his home. Further, FCI Morgantown staff violated Petitioner's Eighth Amendment rights by denying him requested psychological treatment, mental health accommodations, and adequate medical care, including denying him needed medication for 48 hours. Petitioner also alleges that access to the courts was restricted when his legal paperwork was seized, and FCI Morgantown staff repeatedly interfered with his filing grievances. ECF No. 1-1 at 8 – 13.

**Ground 4**: Incident Report #3216326,[4] a 305 Code violation for "possessing unauthorized items," issued at FCI Morgantown, is invalid, and Petitioner is innocent of any and all violations, because the report is erroneous; leaves out key information regarding the events; is capricious, retaliatory, and violates 28 CFR §  541.1; and BOP staff members Dodrill, Gialone, and Captain Foolin intentionally and maliciously orchestrated a criminal conspiracy to harass, intimidate, and retaliate against him, targeting him and denying his civil liberties, including freedom of speech, religion, and freedom from unreasonable searches, by writing him a frivolous Incident Report for a 305 violation. The alleged order was unreasonable and unconstitutional. Petitioner feared for his safety during the described events, pleaded to speak with someone of higher authority than Dodrill, as he repeatedly stated in incident report, because he was afraid to be left alone Dodrill and Gialone. Further, Petitioner alleges he was threatened numerous times in captain's office and feared for his safety. A confiscation form was not written till April 20, 2019, two months after the incident. There was no mention of the confiscated paperwork and wolf pictures;[5] even though they are referenced in incident report, the property remains stolen. Petitioner alleges that all the pictures he brought with him from Danbury FCI were delivered and inventoried by FCI Morgantown F&D[6] [sic] staff on or about October 24, 2018, well over 24 hours prior to the date the incident report was delivered.  As such, the 305 violation charge was in direct violation of 28 CFR § 541.5. Moreover, the local Religious Issues Committee, with the approval of the warden, authorized Petitioner to possess pictures of wolves on a form issued by chaplain Brian Price, and the 2018 FCI Morgantown Inmate A&O Handbook does not limit the number of pictures an inmate is permitted to possess. Counselor Plavi, the UDC chairman who found Petitioner guilty, was also a witness, and was significantly involved in the events leading up to the incident, in violation of 28 CFR 541.7(b), because the complaint Dodrill retaliated against Petitioner for filing was submitted to him at 1026 hours, two hours prior to the incident. Therefore, Plavi must have brought the complaint to Dodrill's attention.  Petitioner requested to submit, in writing, photocopies of the mailing addresses of all envelopes containing photos; copies of any and all complaints written about Dodrill, Gialone, the captain, or Layhue; a copy of the Local Religious Issues Committee decision regarding him; a copy of his "New or Unfamiliar Religious Components Questionnaire"

---

[4] Petitioner did not provide copies of any of the Incident Reports he references in his complaint.

[5] The wolf is apparently a religious figure in Petitioner's unspecified religion.

[6] Petitioner's reference to "F&D" appears to be error; the undersigned presumes from the context in which it was used that Petitioner is referring to "R&D," which stands for "Receiving and Discharge," where, when inmates are first brought into a BOP facility, their property is inventoried.

submission; copies of several pictures of a wolf; a copy of every complaint he ever submitted; and all of his mental health records as evidence at the UDC hearing, but Plavi would not allow any of it to be submitted, in violation of Petitioner's due process rights. These issues are described in Grievance # 968082-F1. ECF No. 1-1 at 14 – 15.

**Ground 5**:[7] Incident Report #3218313, a Code 402 violation for "malingering/feigning a mental disorder," issued at FCI Morgantown by BOP staff member "McCabe" is invalid; he is innocent of any/all violations, because the report is erroneous, vague, unsubstantiated, frivolous, capricious, and retaliatory; omits key information regarding the events; violates 28 CFR § 541.1, was the second incident report written against him in an effort to artificially raise his custody level to justify transferring him to a low-security facility. Prior to January 23, 2019, Petitioner had never received an incident report in over 16 ½ months of BOP custody; then, in less than one week, he received two. Petitioner contends that the incident report written for "malingering/feigning illness" for "faking" autism symptoms was absurd; overlooks his established prior diagnoses; was written by a biased and unqualified BOP employee who wrongfully interfered with the prescribed course of pharmacological treatment by several psychiatrists for his psychiatric diagnoses. ECF No. 1-1 at 16 – 17.

Petitioner further notes that "Grounds 7 – 99 remain reserved." Id.

Petitioner contends that the reason why his remedy by way of § 2255 is inadequate or ineffective to test the legality of his detention is that "this is an appeal of how petitioner's concurrent sentences are being carried out." ECF No. 1 at 9.

Petitioner's November 6, 2019 supplement to his petition contends that when he was placed in the SHU on January 21, 2019 and then later transferred, he was "forced to discontinue participation in productive activities until May of 2019. This resulted in a loss of approximately 50 days worth [sic] of [good] time credits under the First Step Act and the effective loss of good time credits without due process." ECF No. 1-4.

As relief, Petitioner requests a sentence reduction up to and including immediate release; that his sentence be vacated for the unconstitutional conditions of his detention; his incident reports be expunged; his pictures and paperwork returned; his constitutional rights restored; that he be

---

[7] Petitioner's Ground 6 claim is merely a partial reiteration of his request for relief. See ECF No. 1-1 at 18, and Petitioner's claim for relief, *infra*.

released from the SHU; receive daily access to phone and email; that the SIS[8] investigation be terminated; his programming assignments be reinstated; that he be awarded 15 days of Good Conduct Time ("GCT") per month from December 2018 to the present; that he be permitted to participate in productive activities; and that he be provided mental health treatment by a licensed psychiatrist. ECF No. 1 at 8. In Petitioner's "Ground 6," he notes that because there is "no way to right the wrongs that have been inflicted" on him, the "closest thing to restoring the liberties that have been stolen from him is to restore other liberties that have been taken or . . . will be taken . . . in the coming years. In the interest of liberty and justice the most effective resolution . . . would be a sentence reductive [sic] up to and including immediate release." ECF No. 1-1 at 18.

### III. Applicable Law

A § 2241 petition is used to attack the manner in which the sentence is executed. See 28 U.S.C. § 2241. In a § 2241 petition, a prisoner may seek relief from his parole, computation of his sentence or disciplinary actions taken against him. "[T]he Supreme Court [has] held that the writ of habeas corpus was the exclusive civil remedy for prisoners seeking release from custody." Glaus v. Anderson, 408 F.3d 382, 386 (7th Cir. 2005). Also worth noting is that at the "heart of habeas corpus" petitions, the petitioner is challenging "the fact or duration of his physical confinement," or "seeking immediate release or a speedier release from active confinement." Preiser v. Rodriguez, 411 U.S. 475, 498 (1973). On the other hand, a Bivens action is used to hold federal officers "individually liable for constitutional violations." Starr v. Baca, 625 F.3d 1202 (9th Cir. 2011). Even more generally, a Bivens action allows individuals to sue a federal actor

---

[8] SIS is an acronym for the BOP's Special Investigative Services, which directly assists in conducting investigations of inmate violations of the BOP's prohibited acts of various severity levels, such as assaults, introduction of contraband or narcotics, possession of money or currency, communicating gang affiliation and/or participating in gang activities, and other prohibited activities. Investigations can range in length from several hours to weeks or months depending on severity.

because he or she violated a right guaranteed by the Constitution or a federal law. See Bivens, 403 U.S. at 392-94. Further, "[a]lthough 'more limited in some respects,' a Bivens action is the federal analog to an action against state or local officials under § 1983." Id. (quoting Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006)); see Preiser, 411 U.S. at 499 ("a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not the fact or length of his custody.").

Pursuant to 28 U.S.C. § 1391(b), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

The standard for granting injunctive relief in this circuit is set forth in International Refugee Assistance Project v. Trump, 857 F.3d 554 (4th Cir. 2017), cert. granted, 137 S. Ct. 2081 (2017). "A preliminary injunction is an 'extraordinary remedy,' which may be awarded only upon a 'clear showing' that a plaintiff is entitled to such relief." Int'l Refugee Assistance Project, 857 F.3d at 607-08 (citing Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342 (4th Cir. 2009) (citing Winter v. Natural Resources Defense Counsel, Inc., 555 U.S. 7 (2008))). Under the Fourth Circuit standard of review, "[a] preliminary injunction must be supported by four elements: (1) a likelihood of success on the merits; (2) that the plaintiff likely will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor, and (4) that a preliminary injunction is in the public interest." Id. at 608 (citing Real Truth, 575 F.3d at 346). In order to obtain the extraordinary remedy of a preliminary injunction, the burden is on the moving party to demonstrate these elements.  See Dewhurst v. Century Aluminum

Co., 649 F.2d 287, 290 (4th Cir. 2011). The demanding standard outlined above becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of preliminary injunction that merely preserves the status quo pending trial. See East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").

### IV. Analysis

#### A. Civil Rights Claims

As noted *supra*, in Grounds One, Two, Three, Four, and Five, Petitioner makes multiple claims regarding the conditions of his confinement in three different jurisdictions, including this one. Specifically, these claims relate to his being falsely accused; singled out for harassment in multiple ways, based on his LGBT status; being publicly maligned and threatened; being retaliated against; having his property confiscated without cause; permitting his property be stolen; being housed in the SHU and denied hygiene items and paper and pen; being transferred to another prison; being denied a lower bunk and a pillow; orchestrating a criminal conspiracy to harass and intimidate him; subjecting him to frequent, unwarranted pat-downs, cell searches, and random drug/alcohol tests; denying him mental health and other medical care; restricting his access to the courts by confiscating legal materials and interfering with his attempts to file grievances; interference with his rights to practice his religion, exercise his right to free speech, and falsely charging him with disciplinary violations. However, none of these issues are an attack on, nor are they related in any way to the execution of his sentence. To pursue those additional claims, Petitioner must file a lawsuit governed by Bivens v. Six Unknown Agents of the Federal Bureau

of Narcotics, 403 U.S. 399 (1971), because these are claims that are not cognizable in a § 2241 action. For these reasons, this Court lacks jurisdiction to even reach the merits of Petitioner's constitutional claims.

Moreover, Petitioner claims raised in Grounds One and Two regarding the alleged civil rights violations that occurred while he was incarcerated at FCI Danbury, in Danbury, Connecticut, and at the Oklahoma Transfer Center in Oklahoma City, Oklahoma are not properly raised in this jurisdiction at all. Pursuant to 28 U.S.C. § 1391(b), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

In this case, while Petitioner was incarcerated in West Virginia at the time he filed his petition, all of the events giving rise to the Petitioner's cause of action regarding constitutional violations alleged in Grounds One that he alleges occurred at FCI Danbury would have occurred in the District of Connecticut, and the Petitioner has not alleged any connection between the BOP employees at FCI Danbury and this judicial district.  Thus, venue for those claims is not appropriate in this Court.

Likewise, all of the events giving rise to the Petitioner's cause of action regarding constitutional violations alleged in Ground Two that he alleges occurred at the OKTC would have occurred in the Western District of Oklahoma, and the Petitioner has not alleged any connection between the BOP employees at the OKTC and this judicial district.  Thus, venue for those claims is not appropriate in this Court.

Accordingly, the Petitioner must file his Ground One claims of constitutional violations against the BOP employees at FCI Danbury as a <u>Bivens</u> civil rights action in the United States District Court for the District of Connecticut; his Ground Two claims of constitutional violations against the BOP employees at the Oklahoma Transfer Center in the United States District Court for the Western District of Oklahoma as a <u>Bivens</u> civil rights action in that court; and his Grounds Three, Four, and Five claims of constitutional violations against the BOP employees at FCI Morgantown, as a <u>Bivens</u> action in this Court.

**B. § 2241 Claims for Good Conduct Time**

In the instant action, Petitioner makes unclear challenges to what appears to be at least two disciplinary actions; in his request for relief, *inter alia*, he also requests an award of 15 days of GCT per month, for the months of December, 2018 up to the time he filed his complaint. ECF No. 1 at 8. Petitioner does not specifically allege that he lost GCT as a sanction for either disciplinary violation.

Petitioner's Ground Four claim appears to impliedly allege that in Incident Report #3216326, the BOP improperly sanctioned him for a 305 violation (Possessing Unauthorized Item) and in Ground Five, improperly sanctioned him in Incident Report # 3218313 for a 402 violation (malingering/feigning a mental disorder). However, the Respondent notes that Petitioner was sanctioned only with 15 days of loss of visiting privileges for the Code 305 offense and with a loss of 30 days phone privileges for the Code 402 violation. ECF No. 18-1 at 1 – 2. Because Petitioner did not lose any GCT as a result of these disciplinary sanctions, these claims do not challenge the fact or duration of his confinement, and therefore, are not cognizable here.

As for Petitioner's claim to entitlement to an award of 15 days of GCT per month, for the months of December, 2018 up to the time he filed his complaint, contrary to Petitioner's claim,

even under the best of circumstances, federal prisoners do not earn 15 days of GCT per month. Rather, a federal prisoner who is serving a term of imprisonment of more than 1 year, other than a term of imprisonment for the duration of the prisoner's life, *may* receive credit toward the service of his/her sentence, beyond the time served, of up to 54 days at the end of each year of their term of imprisonment, beginning at the end of the first year of the term, subject to the BOP's determination that during that year, the prisoner displayed exemplary compliance with institutional disciplinary regulations. See 18 U.S.C. § 3624(b)(emphasis added). Moreover, as noted *supra*, it is apparent from the Warden's limited response on the issue, that Petitioner has never been sanctioned with the loss of *any* GCT as a result of any disciplinary action at FCI Morgantown, only with the loss of commissary, phone, and visiting privileges, which did not extend the length of his confinement. See ECF No. 18 at 1; see also ECF No. 18-1 at 1 – 2.

Finally, in Petitioner's November 6, 2019 supplement to his petition, he contends that when he was placed in the SHU[9] on January 21, 2019 and then later transferred to another facility, he was "forced to discontinue participation in productive activities until May of 2019. This resulted in a loss of approximately 50 days worth [sic] of [good] time credits under the First Step Act and the effective loss of good time credits without due process." ECF No. 1-4.

As an initial point, given that a prisoner is only entitled to 54 days of GCT per year under the First Step Act, Petitioner's claim of entitlement to "approximately 50 days worth of [good] time credits under the First Step Act" for what could be no more than a 4-month span of time is unclear. Further, the undersigned notes that when Petitioner first filed this habeas petition, the BOP's online inmate locater indicated that his projected release date was April 25, 2021. It has since been updated to reflect a release date of March 27, 2021. Accordingly, it would appear that

---

[9] It appears from the limited record available that Petitioner was at FCI Morgantown on this date.

Petitioner's GCT has already been recalculated pursuant to the First Step Act to credit him with all the GCT that he is entitled to, and that the relief that he was requesting may have already been granted without court intervention. Nonetheless, given that the Warden has not yet had the opportunity to address this new claim, the undersigned will recommend that the parties be given the opportunity to brief this issue on its merits.

C. **Motions for Preliminary and Emergency Injunctions**

1) **First Motion for Preliminary Injunction**

Upon review of the petitioner's first motion for an injunction and the underlying record in this civil action, the undersigned finds that the issue complained of, i.e., access to legal material necessary to prepare his case, materials that were "locked up in his property" and inaccessible to Petitioner while he was housed in the SHU at FCI Morgantown has been mooted by Petitioner's transfer away from FCI Morgantown to FCI Loretto. ECF No. 3.

Accordingly, the undersigned recommends that Petitioner's first motion for a preliminary injunction be denied.

2) **Second Motion for Preliminary Injunction**

After a review of the petitioner's second motion for a preliminary injunction [ECF No. 13] and the underlying record, the undersigned finds that Petitioner's request for a directive from this Court forbidding FCI Loretto from changing his housing assignment, retaliating against him for filing suit, or transferring him during the pendency of his case, because the same will be "detrimental to the orderly process of the action at hand" fails under a review of the Winter factors. At this point in this action, the Respondent has only filed an answer on the limited issue of whether Petitioner lost any good conduct time related to disciplinary violations, and has not yet had an opportunity to respond to any of Petitioner's other as-yet-unsubstantiated allegations. Therefore,

based upon the record currently before the court, given that most of Petitioner's claims are civil rights claims not cognizable in a § 2241 action, Petitioner has not clearly shown that he is likely to succeed on the merits of his claims. Because Petitioner has not made the necessary showing as to the first factor, it is not necessary to even reach the other factors. See Dewhurst, 649 Fed 3d at 293 (if a party cannot establish one of these factors, the court cannot grant a preliminary injunction to the movant).

Moreover, as noted *supra*, Petitioner is attempting to raise these civil rights claims within a habeas corpus action, claims that are not cognizable here. Further, FCI Loretto is not a respondent to this action and this Court has no jurisdiction over FCI Loretto, which is located in Cresson, Cambria County, Pennsylvania, within the jurisdiction of the United States District Court for the Western District of Pennsylvania. A PACER review of Petitioner's other pending cases reveals that in Case No. 3:19cv78 in the Western District of Pennsylvania, Petitioner has filed two motions for preliminary injunctions that are either identical to the motion he has filed here [ECF No. 13] or are substantially the same. See W.D. Pa. Case No. 3:19cv78, ECF Nos. 4-3, 12. The instant motion, as well as the two filed in the W.D. Pa., seek directives ordering FCI Loretto to, *inter alia*, refrain from harassing, intimidating, retaliating against, or in any way targeting him as a result of the case he filed, placing him in the SHU, taking his typewriting supplies, interfering with the filing of grievances, or transferring him to other facilities. See W.D. Pa. Case No. 3:19cv78, ECF No. 12 at 1.

However, here, petitioner is now incarcerated in the Western District of Pennsylvania. All of the events giving rise to the petitioner's second motion for preliminary injunction occurred in the Western District of Pennsylvania, and the petitioner has not alleged any connection between FCI Loretto and this judicial district. Thus, venue for this motion is not appropriate in this Court.

Therefore, because Petitioner has already has substantially the same motion pending within the appropriate jurisdiction, the undersigned recommends that the instant motion be denied for lack of jurisdiction.

**3) Motion for Emergency Injunction**

Finally, review of the petitioner's motion for an emergency injunction [ECF No. 14] and the underlying record in this civil action, the undersigned finds that Petitioner's request for a directive from this Court, to prevent FCI Loretto staff from interfering with his legal mail and the receipt of copies of medical records he contends are necessary to litigate one of his pending cases likewise fails under a review of the Winter factors. At this point in this action, the Respondent has only filed an answer on the limited issue of whether Petitioner lost any good conduct time incident to a disciplinary violation, and has not yet had an opportunity to respond to Petitioner's other as-yet-unsubstantiated allegations. Therefore, based upon the record currently before the court, given that most of Petitioner's claims are civil rights claims not cognizable in a § 2241 action, Petitioner has not clearly shown that he is likely to succeed on the merits of his claims. Because Petitioner has not made the necessary showing as to the first factor, it is not necessary to even reach the other factors. See Dewhurst, 649 Fed 3d at 293 (if a party cannot establish one of these factors, the court cannot grant a preliminary injunction to the movant).

Moreover, the undersigned notes that a review of Petitioner's other pending cases on PACER indicates that he has been actively litigating two civil rights actions. Case No. 3:19cv78, was filed on May 20, 2019 in the Western District of Pennsylvania.[10] A review of that docket indicates that there appear to be frequent filings by Petitioner, including an identical copy of the

---

[10] Petitioner's claim in that case is that the defendants have violated the Americans with Disabilities Act of 1990; he argues that he suffers from social anxiety disorder and Asperger Syndrome; that his "intense fear of large groups of people" gives him panic attacks; and therefore, he should be excused from having to eat in the dining hall with other inmates.

14

"Motion for Emergency Injunction" that Petitioner has filed here [see ECF No. 14], alleging that an envelope mailed by a physician Petitioner requested copies of medical records from was rejected by FCI Loretto on the basis of its color, and that FCI Loretto "illegally intercepted and read a letter from an attorney" that was clearly marked "LEGAL MAIL STANLEY GREEFIELD – ATTORNEY." See W.D. Pa. Case No. 3:19cv78, ECF No. 6 (emphasis in original).[11]

As noted *supra*, here, petitioner is incarcerated in the Western District of Pennsylvania. This Court has no jurisdiction over FCI Loretto, which is located in Cresson, Cambria County, Pennsylvania, within the jurisdiction of the United States District Court for the Western District of Pennsylvania. All of the events giving rise to the petitioner's emergency motion for preliminary injunction occurred in the Western District of Pennsylvania, and the petitioner has not alleged any connection between FCI Loretto and this judicial district. Thus, venue for this motion is not appropriate in this Court. Therefore, because Petitioner already has substantially the same motion pending within the appropriate jurisdiction of the Western District of Pennsylvania, the undersigned recommends that this motion be denied for lack of jurisdiction.

## IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Petitioner's civil rights claims regarding the conditions of his confinement, alleged in Grounds One and Two of the petition, be **DISMISSED without prejudice** to Petitioner's right to raise those issues in civil rights complaints filed in the United States District Court for the District of Connecticut and the United States District Court for the Western District of Oklahoma, respectively.

---

[11] Petitioner's pending other civil rights case, Case No. 1:19cv3173, filed on October 21, 2019 in the District of Columbia, raises some of the same claims he raises here regarding violations of his religious rights, and includes the Respondent in this action, C. Gomez, along with numerous other BOP employees from FCI Morgantown as well as several other jurisdictions (including the OKTC), as defendants. Petitioner has a pending motion for preliminary injunction in that action, raising claims of religious rights violations, but has filed no motion alleging or suggesting that FCI Loretto has in any way interfered with his legal mail.

The undersigned recommends that Petitioner's Ground Four and Five claims of wrongful disciplinary actions and for an award of GCT should be **DENIED and dismissed with prejudice,** because Petitioner was not sanctioned with the loss of GCT for either.

The undersigned further **RECOMMENDS** that Petitioner's civil rights claims for conditions of confinement at FCI Morgantown, raised in Grounds Three, Four, and Five, should be **DENIED without prejudice** to Petitioner's right to raise those claims in a Bivens civil rights complaint in this Court, should Petitioner choose to pursue them.

Therefore, the undersigned **RECOMMENDS** that the Warden be **DIRECTED** to file a supplemental response to Petitioner's remaining § 2241 claim, raised in his November 6, 2019 supplement [ECF No. 1-4], regarding Petitioner's claim to entitlement under the First Step Act to 50 days of GCT from January 21, 2019 until the date he filed his petition.

Accordingly, the undersigned further **RECOMMENDS** that the Clerk be **DIRECTED** to send the applicable forms for the filing of a Bivens action in this district to Petitioner, to permit him to file his civil rights claims against the FCI Morgantown BOP staff. The Petitioner should fill out and return the court-approved forms to the Clerk of Court **within 14 days of the date of service of this Report and Recommendation.** If the Petitioner fails to timely fill out and return the court-approved forms, his Bivens claims contained in his § 2241 petition as Grounds Three and Four will be given no consideration and will be recommended for dismissal upon final review of his remaining § 2241 claim.

Further, the undersigned **RECOMMENDS** that Petitioner's pending Motion to File Additional Pages and Grounds to Petition for Habeas Corpus and to Return from Leave [ECF No. 12] be **DENIED as moot, because it pertains to Petitioner's civil rights claims, which are not cognizable in a habeas corpus action.**

Finally, the undersigned **RECOMMENDS** that Petitioner's pending Motion for Preliminary Injunction Granting Access to Legal Materials [ECF No. 3] be **DENIED as moot**; and that his second Motion for Preliminary Injunction [ECF No. 13] and his Motion for Emergency Injunction [ECF No. 14] be **DENIED for lack of jurisdiction**.

Petitioner is notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days (filing of objections) from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

Finally, the Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner via certified mail, return receipt requested, to his last known address as reflected on the docket, and to transmit a copy electronically to all counsel of record.

DATED: December 3, 2019.

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE