**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JESSE RUSSELL SIMPSON,**

**Petitioner,**

**v.**
                                        **Civil Action No. 1:19cv68**
                                        **(Judge Kleeh)**

**C. GOMEZ, Warden,**

**Respondent.**

**REPORT AND RECOMMENDATION**

On March 29, 2019, the *pro se* Petitioner, Jesse Russell Simpson ("Simpson"), an inmate then-incarcerated at FCI Morgantown in Morgantown,[1] West Virginia, initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Petitioner also filed a Motion for Leave to File Additional Pages and Grounds and to Prepare Exhibits for Petition for Writ of Habeas Corpus and a Motion for Preliminary injunction Granting Access to Legal Materials.  ECF Nos. 2, 3. Attached to two of Petitioner's motions were cover letters containing a request for the Clerk to send copies of Court filings to his mother.  ECF Nos. 2-3, 3-1.  The Clerk of Court issued a Notice of Deficient Pleading, directing Petitioner to file a motion to proceed as a pauper with the necessary supporting documents, or pay the filing fee within twenty-one days. ECF No. 4. On April 18, 2019, Petitioner paid the filing fee. ECF No. 9. On May 13, 2019, by separate motions, Petitioner moved to file additional pages and grounds to his petition and "to return from leave" [ECF No. 12]; he also moved for another preliminary injunction. ECF No. 13.

---

[1] On or about May 6, 2020, Petitioner was released to home confinement in Clarksville, Maryland under the supervision of a halfway house in Baltimore, Maryland, to complete serving his sentence.  See ECF No. 44.  According to the Bureau of Prison's ("BOP") inmate locator, he is scheduled to be released on March 27, 2021. See FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited Apr. 16, 2019).

On June 26, 2019, Petitioner moved for an emergency injunction. ECF No. 14. On October 17, 2019, the undersigned directed the Respondent to show cause on the limited issue of whether Petitioner had ever lost any Good Conduct Time ("GCT") as a sanction for a disciplinary violation. ECF No. 16. On November 5, 2019, the Warden filed a response. ECF No. 18.

On November 6, 2019, Petitioner filed a Motion for Extension of Time to File Related Civil Action(s) and a Motion to Submit Additional Information.[2]  ECF Nos. 19, 20. By separate Orders, entered November 8, 2019, Petitioner's Motion for Extension of Time to File Related Civil Action(s) was denied; his Motion to Submit Additional Information was construed as a motion to supplement and granted, and the Clerk was directed to redocket it as an attachment to the petition; his Motion for Leave to File Additional Pages and Grounds and to Prepare Exhibits for Petition for Writ of Habeas Corpus was construed as a motion for leave to file excess pages and granted; and his letter motions to have copies of Court filings sent to his mother were denied. ECF Nos. 21, 22, 24, 25.

On December 3, 2019, the undersigned issued a Preliminary Report and Recommendation ("R&R"), recommending that Simpson's civil rights claims regarding the conditions of his confinement, alleged in Grounds One and Two of the petition, be dismissed without prejudice to Simpson's right to raise them in civil rights complaints in the United States District Court for the District of Connecticut and the United States District Court for the Western District of Oklahoma respectively; Petitioner's Ground Four and Five claims of wrongful disciplinary actions and for an award of GCT be denied and dismissed without prejudice, because Petitioner was not sanctioned with the loss of GCT for either; Petitioner's civil rights claims regarding conditions of confinement at FCI Morgantown, raised in Grounds Three, Four, and Five, be denied without prejudice to

---

[2] Attached to Petitioner's Motion to Submit Additional Information is a duplicate copy of the Motion for Extension of Time to File Related Civil Action(s). See ECF Nos. 19, 20-1.

Petitioner's right to raise them in a <u>Bivens</u> civil rights action in this Court, should Petitioner choose to pursue them; and that the Warden be directed to file a supplemental response to Petitioner's remaining § 2241 claim, raised in his November 6, 2019 supplement. Finally, the undersigned recommended that Simpson's pending Motion to File Additional Pages and Grounds to Petition for Habeas Corpus and to Return from Leave, and his pending  Motion  for Preliminary Injunction Granting Access to Legal Materials both be denied as moot; and that his second Motion for Preliminary Injunction and his Motion for Emergency Injunction be denied for lack of jurisdiction. ECF No. 27. The undersigned recommended that the Clerk be directed to send the applicable forms for the filing of a <u>Bivens</u> action in this district to Petitioner, to permit him to file his civil rights claims against the FCI Morgantown Bureau of Prisons ("BOP") staff, should he choose to pursue those claims; and Petitioner was advised that if he did not fill out and return the <u>Bivens</u> forms, the <u>Bivens</u> claims contained in his § 2241 petition as Grounds Three and Four would be given no consideration and would be recommended for dismissal upon final review of his remaining § 2241 claim. <u>Id.</u>

On December 11, 2019, Simpson filed a Motion to File Objections to the Preliminary R&R and Clarify Information. ECF No. 29. On December 27, 2019, Simpson filed a Motion to Supplement the Record. ECF No. 31. On March 5, 2020, Simpson's Motion to Supplement was granted. ECF No. 32. On March 19, 2020, a Memorandum Opinion and Order Adopting in Part and Rejecting in Part Preliminary R&R was entered. ECF No. 34. On March 24, 2020, an Amended Memorandum Opinion and Order was entered, amending the portion of the original Opinion/Order that denied without prejudice Petitioner's claims in Grounds Four and Five to a denial with prejudice of those claims, thereby adopting, rather than rejecting the R&R on that issue. ECF No. 35.

On April 7, 2020, the Respondent filed a Motion to Dismiss with a memorandum in support on the remaining claim contained in the supplement. ECF No. 38.  Petitioner also filed a motion for reconsideration of the Amended Memorandum Opinion and Order. ECF No. 39. On April 8, 2020, a <u>Roseboro</u> Notice issued.  ECF No. 40. On April 21, 2020, Petitioner moved for an extension of time to respond; by Order entered May 6, 2020, Petitioner's motion was granted. ECF Nos. 42, 43. Petitioner filed a Notice of Change of Address, indicating that he had been released from prison, and moved for leave to file electronically on May 12, 2020; by Order entered May 13, 2020, Petitioner's motion was denied. ECF Nos. 44, 45, 46. On May 26, 2020, Petitioner moved for reconsideration of the Order denying his motion to file electronically. ECF No. 48. On May 27, 2020, Petitioner moved for leave to exceed the page limit and to file his response via fax [ECF No. 51]; by Order entered May 29, 2020, the motion was denied. ECF No. 52. On June 4, 2020, Petitioner filed his response in opposition. ECF No. 53.

This case is again before the Court for R&R, pursuant to LR PL P 2.

## I. <u>Facts</u>

Petitioner is currently serving a 33-month sentence imposed on April 20, 2016 in the Northern District of Georgia in Case No. 1:16cr348-1, after he pled guilty to Count Five of a 5-count indictment, importing/manufacturing firearms, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D),  and a concurrent 50-month sentence imposed on June 13, 2017, in the Eastern District of Michigan, in Case No. 4:16cr20514-3, after he pled guilty there pursuant to a written plea agreement, to Count Nine of a superseding indictment, transport of an unregistered firearm in interstate commerce, in violation of 26 U.S.C. §§ 5841, 5861(j), and 587.

Petitioner did not file direct appeals of either conviction, nor did he file any motions to collaterally attack those convictions or sentences.

## II.  Remaining Claim of the Petition

### A. First and Second Supplements to the Petition

Petitioner's November 6, 2019 supplement to his petition contends that when he was placed in the Special Housing Unit ("SHU") (at FCI Morgantown) on January 21, 2019[3] and then later transferred (to FCI Loretto, in Cresson, PA), he was "forced to discontinue participation in productive activities until May of 2019.  This resulted in a loss of approximately 50 days['] worth of time credits under the First Step Act and the effective loss of good time credits without due process." ECF No. 20, ECF No. 1-4.

Petitioner's second supplement to the petition, filed on December 27, 2019 and titled Motion to Supplement the Record, attaches an exhibit, an untitled document that purports to show that he is "eligible" for First Step Act ("FSA") relief and that his recidivism risk level is "minimum." See ECF No. 31 at 2, ECF No. 1-8 at 2. In the motion to supplement the record, he explains that he received this untitled internal document at mail call on December 16, 2019; he contends that it shows that "he was eligible to receive 10 days per month of participation in productive activities at the time of his SHU placement." Id. at 1.

### B. Respondent's Motion to Dismiss

Respondent argues that the Petitioner's supplemental claim that he is entitled to 50 days' worth of lost programming credits should be dismissed because Petitioner failed to exhaust his administrative remedies related to the claim; Petitioner has received all credit he is due under the FSA; the issue is not yet ripe for review; and Petitioner has failed to state a cognizable claim for relief that this Court can grant.  ECF No. 38-1. Attached to its memorandum in support, Respondent filed a sworn declaration [ECF No. 38-2]; a copy of Petitioner's Administrative

---

[3] Petitioner's memorandum in support of his original petition states that he arrived at FCI Morgantown on October 23, 2018.  ECF No. 1-1 at 8.

Remedy Generalized Retrieval from January 21, 2019 through April 6, 2020 [ECF No. 38-3 at 2 - 199]; and a copy of Petitioner's Sentence Monitoring Computation Data.  ECF No. 38-3 at 201 – 03.

## C. **Petitioner's Response in Opposition**

Petitioner reiterates his arguments and attempts to refute the Warden's on the same. Specifically, he contends that he did exhaust all available remedies, but that the staff at the institution rendered the grievance process "opaque," or unavailable to him in multiple ways, by refusing his grievances; refusing to complete them because he had not completed the informal resolution process; refusing to sign them; delaying sending them; arbitrarily rejecting them; issuing "blank denials;" not responding to them; or denying him access to the grievance process altogether while he was in the SHU.  ECF No. 53 at 1 - 8.   He further disputes the number of grievances Respondent claims that he filed ("394 submissions") and asks that the Respondent be "held in contempt" for exaggerating that number in its response. Id. at 1.

Simpson reiterates his claim that he did not receive all the credit he was due under the FSA, and contends that Respondent's argument that his GCT has "already [been] corrected under an entirely unrelated section of the [FSA]" is unavailing and unsupported by "any form of logic, statute, or case law." Id. at 8. He argues that because his Recidivism Risk Level was scored at "minimum" and he participated in Evidence-Based Recidivism Reduction Programs ("EBRR") after the FSA was signed on December 21, 2018, he is entitled to at least 10 days per month of time credits toward residential re-entry placement, home confinement, or probation. Id. Petitioner lists various programs he was involved in before he was wrongfully placed in the SHU in retaliation for his First Amendment protected activities,[4] and contends that he was not given the

---

[4] Petitioner apparently follows a unique, non-traditional, non-specific religious belief system that honors the wolf or its spirit as holy. He alleges that "shortly after" he was placed in [FCI Morgantown's] SHU, in a February 19, 2019

appropriate time credits for a period in excess of ten months.  Id. at 8 – 9. He argues that he was entitled to earn time credits for programming completed between December 21, 208 through January 21, 2019, and from May 29, 2019 through March 19, 2020.  Id. at 10. Alternatively, he argues he was entitled to time credits from January 21, 2019 through November 28, 2019, for programming he would have completed but for the Respondent's "illegal" placement of him in the SHU, thereby interrupting his programming. Id. at 11.

Petitioner argues that his claim regarding time credits for completing programs is ripe for review, because both timeline factors listed by Respondent (the requirement for the BOP to develop and release, "not later than 210 days after the date of enactment" a "risk and needs assessment system;" and to "review all inmates for eligibility" by January, 2020, are dates which have already passed. Id. at 9.  He contends that the BOP has already identified the EBRR that counts toward time credits and all that is left for the BOP to do in his case is to apply the 150 days of time credits he earned toward his release date, giving him a release from home confinement on October 28, 2020. Id. at 9 – 10. He notes that Respondent's contention is essentially that the BOP is "working on it" is insufficient, because it gives no concrete steps that will be taken or time frames in which they should be completed. Id. at 10. He argues that the statute requires the immediate application of time credits to avoid irreparable harm. Id.

Finally, Petitioner contends that he has specified a concrete injury for the Court to rectify. Id. He contends that if it were not for the Respondent's retaliatory acts regarding his First Amendment-protected activities, pled in the original petition, he would have been able to

---

memorandum to  the Acting Assistant Director Reentry Services Division, the Respondent alleged that although "our research" into Petitioner's religion "yielded limited information" because Petitioner did not identify a specific religion by name, their research did find a technique called  "spiritual shapeshifting" that "lined very closely" to what Petitioner described, and which, when attributed to wolves, has been linked to a mythical being often referred to as a "werewolf," a being capable of "horrendous acts of violence, to include cannibalism," and therefore, Petitioner was a security concern.  ECF No. 53, n.1 at 9; see also ECF No. 53-6 at 1 – 2.

participate in a total of approximately 15 months of BOP-approved EBRR, but because he was placed in the SHU, prematurely withdrawn from participation in the programs, and then transferred, preventing him from continuing. Id. at 10 – 11. Further, he argues that not only should he have been able to participate in four extra months of EBRR programming, he was not even given credit for the months that he did participate, because he "has been credited no time-credits whatsoever." Id. at 11.

As relief, he asks the Court to deny the Respondent's motion to dismiss, and credit him 150 days of GCT. Id.

Attached to Petitioner's response are a sworn declaration [ECF No. 53 at 12]; another copy of the attachment provided in Petitioner's second supplement, the undated form regarding his eligibility for the FSA that notes his recidivism risk level is "minimum; [ECF No. 53-1 at 1]; a copy of the BOP's Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities (PA) [ECF No. 53-2]; a copy of an October 30, 2018 BOP Psychology Services Group Participation expulsion note [ECF No. 53-3]; a copy of a May 29, 2019 BOP Psychology Services General Population Tx Group note about the completion of a "Basic Cognitive Skills Group" [ECF No. 53-4 at 1]; a copy of a BOP Psychology Services Group Participation note about the completion of a group titled "[136]BCS 5019" [id. at 2]; a copy of a BOP Psychology Services Group Participation note for a group titled "[148] Criminal Thinking 10-2019," status note indicating total hours completed were "0.0" [ECF No. 53-5]; a copy of a February 19, 2019 Memorandum for R.L. Rhodes, Acting Assistant Director Reentry Services Division from C. Gomez, Warden of FCI Morgantown re: Religious Issues Committee Request [ECF No. 53-6 at 1 - 2]; a copy of a January 23, 2019 Memorandum for C. Gomez, Warden, FCI Morgantown from A. McCabe, Chief of Psychology, FCI Morgantown, re: Psychological Review Concerning

Religious Request[5] [id. at 3]; a copy of an undated BOP New or Unfamiliar Religious Components Questionnaire completed and signed by Petitioner and co-signed by the Chaplain and Warden of FCI Morgantown [id. at 4 – 9]; a copy of a March 29, 2019 TRULINCS grievance raising four claims, the first of which alleging that Petitioner was placed in the SHU on January 23, 2019 [sic] to intentionally deprive him of good time credits which he would have begun collecting at the end of December 2018 after the FSA was applied [ECF No. 53-7]; copies of multiple grievances and the responses thereto [ECF No. 53-8 - ECF No. 53-28 at 4]; and a copy of a February 11, 2019 letter from C. Gomez, Warden of FCI Morgantown to Petitioner regarding the large number of Requests for Administrative Remedies Petitioner had filed since his incarceration began on September 11, 2017 and advising Petitioner that thereafter, he would be limited in the number of requests for informal resolution that would be processed at a time [ECF No. 53-28 at 5], along with a February 11, 2019 BOP Inmate Request to Staff [id. at 6]; and a copy of a December 2, 2019 TRULINCS email to "Ms. Jones" regarding "Inmate Work Assignment." Id. at 7.

### III. Standard of Review

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing

---

[5] The psychological review indicates that Petitioner had been assessed "a number of times prior to and during his incarceration" and that he currently carried the diagnoses of "Cannabis Use Disorder, Severe; Stimulant Related Disorder, Severe, Cocaine; and Autism Spectrum Disorder, Mild. He is very highly functioning . . . [and] [n]one of the diagnoses . . . involve any psychotic symptoms which would drive delusional beliefs. It does not appear that he believes he is a wolf . . . does not act as a wolf or engage in wolf-like behaviors. This does not appear to be a belief system driven by mental illness, and it does not appear to be detrimental to his functioning at this time." ECF No. 53-6 at 3.

more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10 (specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Simpson is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held

to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita</u>, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u> This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587.

## IV. <u>Applicable Law</u>

### A. <u>Exhaustion of Administrative Remedies</u>

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. <u>See</u>, *e.g.*, <u>Martinez v. Roberts</u>, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241

petition); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3rd Cir. 1996) (same); <u>McCallister v. Haynes</u>, 2004 WL 3189469 (N.D. W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. <u>See</u> <u>LaRue v. Adams</u>, 2006 WL 1674487 *8 (S.D. W.Va. June 12, 2006) (citing <u>Smith v. Angelone</u>, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. <u>See</u> <u>id.</u> at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. <u>See</u> <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" <u>Id.</u> at 1327 (citation omitted).

A federal prisoner's administrative remedy is not exhausted where the inmate is expressly instructed to resubmit a deficient submission and he fails to do so. <u>Tucker v. Helbig</u>, No. 8:13-cv-00401, 2013 WL 6288674, at *8-9 (D.S.C. Dec. 4, 2013) *aff'd*, 566 F. App'x 268 (4th Cir. 2014) (*per curiam*) (unpublished). When a prisoner files a complaint without first exhausting

administrative remedies, dismissal without prejudice is appropriate.  See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004); see also  Johnson v. Cannon, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010)(unpublished), aff'd, 390 F. App'x 256 (4th Cir. 2010)(per curiam)(unpublished); Stokes v. Moore, No. 5:08-CT-2045-FL, slip op. At 4 (E.D.N.C. Jan. 26, 2010)(unpublished); Shouse v. Madison, 2010 WL 276543, at *1 (W.D. Va. Jan 19, 2010) (unpublished).  Doing so allows the prisoner an opportunity to exhaust the administrative process and then file a new suit if the outcome of the administrative process is not favorable to the prisoner.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based.   If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response.   An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D. Md. 1997).

Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. The alpha-numeric suffix identifies the specific level in the administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. For each specific remedy request, the numerical ID, or case number, remains the same, while

the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. Furthermore, at each level, the letter is followed by a number, for example, "F1," which indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and refiles the appeal at that level, the suffix would be "F2." Id.

Here, Respondent has produced a copy of the sworn Declaration of Howard Williams, Legal Assistant at the Mid-Atlantic Regional Office of the BOP ("Williams Decl."), averring that based on a review of Petitioner's SENTRY Administrative Remedy Generalized Retrieval, from January 21, 2019 until April 6, 2020, there is no evidence that Petitioner ever filed any administrative remedy related to his request for time credits pursuant to the FSA. See Williams Decl., ECF No. 38-2, ¶ 4 at 2. Respondent also produced a copy of Petitioner's SENTRY Administrative Remedy Generalized Retrieval for the same dates. See ECF No. 38-3.

Petitioner's response in opposition vigorously disputes Respondent's contention that he never filed a grievance over the issue. In support, he contends that (on an unspecified date) he filed "administrative remedy 979219" in which he complained, in the first paragraph, that he had been placed in the SHU to "intentionally deprive him of good time credits which he would have begun collecting at the end of DECEMBER 2018 after the First Step Act was applied." ECF No. 53 at 1 – 2. He attaches a copy of this initial grievance; a March 28, 2019 Request for Administrative Remedy, on which he wrote "See Attachment A.2. Acting Unit Manager Jeremy Lyon authorized petitioner to proceed directly with BP-9. ECF No. 53-8. "Attachment A.2" is a March 29, 2019 TRULINCS electronic message addressed to "Shana Simpson," raising four claims,[6] only the first

---

[6] The other claims were that he was placed in the SHU to intentionally restrain his First Amendment protected relationships with family and friends; to intentionally stifle the practice of his religion; and that all these actions were part of a BOP "staff criminal conspiracy to harass, intimidate, retaliate against, and target LGBT inmates." ECF No. 53-7.

of which addressed Petitioner's claim regarding the deprivation of time credits under the FSA. See ECF No. 53-7.[7] As relief, he requested that the BOP employees who took part in the conspiracy be terminated; the conspiracy be terminated immediately; he be compensated in the amount of $10,000,000.00; his sentence be vacated; and he not be harassed or retaliated against or targeted in any way for filing the grievance. Id.

Petitioner produced a copy of a June 2, 2019 Receipt – Administrative Remedy, Remedy ID 979219-F1, in which "subject 1" was listed as "unprofessional, inappropriate conduct or misconduct by staff," stating that the date the remedy was received was May 30, 2019 and the date its response was due was June 19, 2019. ECF No. 53-13 at 2.

Next, Petitioner produced a copy of a June 20, 2019 "Extension of Time for Response – Administrative Remedy" for Remedy ID 979219-F1, stating that "additional time is needed to respond to the administrative remedy request identified below." The time for the BOP's response was extended to July 9, 2019. ECF No. 53-13 at 3.

Petitioner also produced a copy of a June 24, 2019 Response to Administrative Remedy Request by "V. Moser, Warden" in Remedy ID 979219-F1, noting that Petitioner's request was received on May 30, 2019, and that Petitioner's claims were that he was placed in the SHU to intentionally deprive him of good time credits; was denied full access to communication with family and friends; and that staff engaged in a criminal conspiracy to harass, intimidate, retaliate against and target LBGT inmates. ECF No. 53-14. Petitioner was advised that the BOP would review his allegations of staff misconduct and refer them, if necessary, to "the appropriate department for investigation" but that Petitioner would not be advised of the outcome of any such investigation. Id. Further, Petitioner was advised that claims for monetary compensation must be

---

[7] Petitioner also produced a duplicate copy of this. See ECF Nos. 53-17, 53-18.

made through the tort claim process; requests for early release could not be granted through the administrative process; and there were no negative repercussions for utilizing the Administrative Remedy Program. Id. He was advised of his right to appeal to the Regional Director. Id.

Next, Petitioner produced a copy of a June 28, 2019 Regional Administrative Remedy Appeal he filed in Remedy ID 979219-R2, complaining that none of his grievance requests were granted, and that his appeal was delayed by mailing issues with FCI Loretto's mail room.[8] ECF No. 53-15. It was stamped as received in the BOP Regional Counsel's office on August 2, 2019. Id.

Petitioner also produced a July 24, 2019 Rejection Notice – Administrative Remedy, for Remedy No. 979219-R1, Regional Appeal, noting that "[f]or the reasons listed below, this regional appeal is being rejected and returned to you.  You should include a copy of this notice with any future correspondence regarding the rejection." ECF No. 53-16. The "subject 1" of the appeal, which was received on July 15, 2019, was "unprofessional, inappropriate conduct or misconduct by staff," and the reasons for rejection were (1) your appeal is untimely. Regional Appeals (BP-10) must be received within 20 days of the Warden/CCM response or receipt of the DHO report. This time includes mail time; (2) provide staff verification stating reason untimely filing was not your fault; (3) see remarks; (4) you may resubmit your appeal in proper form within 10 days of the date of this rejection notice. Under "Remarks," it stated "your appeal was due by 7-14-19. The document that belongs to another inmate will not be returned to you." Id. Petitioner wrote on the Rejection Notice "received at mail call 7/29/2019." Id. He attaches a certified mail receipt showing a mailing to the N.E. Regional Director, but the date of the mailing is illegible. Id. at 2.

---

[8] Petitioner also noted that page 2 of the Warden's response was a BP-9 written by another inmate; he questioned why he received another inmate's confidential information and wondered whether his own administrative filings were being shared with other inmates. ECF No. 53-15.

Petitioner also attaches a copy of an August 24, 2019 Rejection Notice – Administrative Remedy, for Remedy ID 979219-R2, Regional Appeal, noting that "for the reasons listed below, this regional appeal is being rejected and returned to you. You should include a copy of this notice with any future correspondence regarding the rejection." ECF No. 53-16 at 4. "Subject 1" of the appeal was "unprofessional, inappropriate conduct or misconduct by staff," and the reasons for rejection were: (1) your appeal is untimely. Regional appeals (BP-10) must be received within 20 days of the warden/CCM response or receipt of the DHO report. This time includes mail time; (2) provide staff verification stating reason untimely filing was not your fault; (3) see remarks; (4) you may resubmit your appeal in proper form within 10 days of the date of this rejection notice. Id. Under "remarks," it stated "your appeal was due by 7-14-19. You did not send a staff memo." Id.

Finally, Petitioner attached a copy of an August 29, 2019 Central Office Administrative Remedy Appeal in Remedy ID 979219-A1, in which he complained that he had received 12 rejected BP-10 submissions that day, all for various (unspecified) reasons; he accused the BOP's North East Regional Office of having "no intention of remedying" any of his issues, but simply leaving them for the courts to decide. ECF No. 53-16 at 5.  He complained of having been "bounced back and forth between Central Office and Regional for months now and these are the final administrative appeals for these issues." Id. He complained that it was "painfully obvious" that the BOP was acting in bad faith, and that it was futile to direct the appeals back to "regional" because the Regional Director "refuses to follow Central Office directions." Id.

A careful review of the voluminous copy of Petitioner's SENTRY Administrative Remedy Generalized Retrieval produced by the Respondent, indicates that Respondent's contention that Petitioner never filed any administrative remedy related to his request for time credits pursuant to the FSA has no merit. It is clear that Petitioner did file grievances over the claim at issue and that

proof of the same is clearly contained within the SENTRY records that Respondent produced. Remedy ID 979219 was filed while Petitioner was at FCI Loretto; Remedy ID 979219-F1 was received on May 30, 2019, noting that "INM claims was sent to SHU to take away GCT 1st AMND." ECF No. 38-3 at 77.  On July 15, 2019, the Remedy ID 979219-R1 was received, for the same claim; it was rejected because the "appeal was due by 7-14-19. Also[,] the document that belongs to another inmate will not be returned to you." Id. at 94. On August 2, 2019, Remedy ID 979219-R2 was received, raising the same claim; it was rejected on August 23, 2019 because "your appeal was due by 7-14-19. You did not send a staff memo." Id. at 104. On September 3, 2019, Remedy ID 979219-A1 was received, raising the same claim; it, too, was rejected; the remarks indicated that "if staff provide memo stating the late filing was not your fault, then re-submit to the level of the original rejection." Id. at 116.

Accordingly, it is apparent that Petitioner, and not Respondent, is correct: Petitioner did in fact file multiple grievances over the claim at issue. However, there is nothing in the record before the undersigned to show that Petitioner finished correcting the deficiencies with those grievances. While Petitioner makes the argument that the Respondent repeatedly interfered with his attempts to exhaust, the undersigned is not persuaded.  It is apparent that Petitioner was able to file his grievances at each level, often multiple times, but it does not appear that he ever complied with the rejection notice by obtaining the "staff memo" he was directed to obtain to prove, at the Central Office level, that the delay in submitting Remedy ID 979219-A1 was not his fault, but rather, a result of the alleged delays in the prison mail system. This is fatal to receiving substantive review of his claims. As noted *supra*, a federal prisoner's administrative remedy is not exhausted where, as here, an inmate is expressly instructed to resubmit a deficient submission and he fails to do so. See Tucker v. Helbig, *supra,* 2013 U.S. Dist. LEXIS 170673 at *2.

Exhaustion of administrative remedies would clearly be appropriate in this instance, given that the BOP is charged with the responsibility of sentence computation and has expertise in this area. See United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351 (1992) (the Attorney General, through the BOP, has the responsibility for administering federal sentences); United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990) (the power to grant jail time credit lies exclusively with the Attorney General). Moreover, the record now before this Court is devoid of the necessary facts by which this Court needs to accurately assess the legitimacy of the petitioner's claims. By requiring the petitioner to attempt resolution of his claim within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process. Here, Petitioner's claim to entitlement to time credits for completing EBRR is uncertain, given that the FSA was not fully implemented at the time Petitioner successfully completed the programs in which he was enrolled, and this specific information is within the BOP's possession.

**First Step Act: Good Conduct Time**

The FSA, enacted on December 21, 2018, amended 18 U.S.C. § 3624(b)(1) by increasing the maximum allowable GCT credits for prisoners from, 47 days to 57 days per year. 132 Stat. 5914, § 102(b)(1). The effective date of the change in the GCT calculation was delayed until the Attorney General completed a risk and needs assessment system to "broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programing and 'determine when a prisoner is ready to transfer into

prerelease custody or supervised release in accordance with [§] 3624'" <u>Bottinelli v. Salazar</u>, 929 F.3d 1196, 1197-98 (9th Cir. 2019) (quoting § 101(a), 132 Stat. at 519697 § 101(a)).

Here, as already noted in the preliminary R&R, "when Petitioner first filed this habeas petition, the BOP's online inmate locater indicated that his projected release date was April 25, 2021. It has since been updated to reflect a release date of March 27, 2021. Accordingly, it would appear that Petitioner's GCT has already been recalculated pursuant to the First Step Act to credit him with all the GCT that he is entitled to, and that the relief that he was requesting may have already been granted without court intervention." <u>See</u> ECF No. 27 at 11 – 12.

**First Step Act: Time Credits**

The FSA also initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism programming. More specifically, a prisoner will earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A)(i). In addition, a prisoner, who is determined to be a minimum or low risk of recidivating will earn an additional 5 days of time credits for every 30 days of successful participation if he has not increased his risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii).

However, these programs did not go into effect immediately. 18 U.S.C. § 3632(d)(4). The Attorney General was allowed 210 days after the FSA was enacted on December 21, 2018, to develop and publish the Risk and Needs Assessment System, which the BOP was to use as a guide to implement the programs. 18 U.S.C. § 3632(a). The Attorney General published the Risks and Needs Assessment System on July 19, 2019.[9] The BOP then had 180 days, or until January 15,

---

[9]   <u>The First Step Act of 2018: Risk and Needs Assessment System</u> is accessible online at < https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf >

2020, to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. 18 U.S.C. § 3621(h). Therefore, the petitioner's claim for time credits did not ripen until January 15, 2020, nearly one year after he had already been placed in the SHU, and he has prematurely filed this petition as it relates to the same.[10] Petitioner's response in opposition contends that he "was participating in and completing BOP-approved Evidence-based Recidivism Reduction programs from December 21, 2018[] to January 21, 2019, and from May 29, 2019 [] to March 19, 2020." ECF No. 53 at 10. If Petitioner believes that he is entitled to time credits for any programming he completed during his incarceration during those dates or later, he must first finish addressing his request through the BOP administrative grievance process, by completing the exhaustion process that he apparently abandoned, and permitting the BOP to calculate his entitlement to any time credits.

## VI.  <u>Recommendation</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, construed here as a Motion for Summary Judgment [ECF No. 38] be **GRANTED** and Petitioner's remaining claim raised in the supplement to his § 2241 petition be **DENIED** and **DISMISSED without prejudice** for failure to exhaust his administrative remedies.

Further, the undersigned **RECOMMENDS** that Petitioner's pending Motion for Reconsideration of the Amended Memorandum Opinion and Order [ECF No. 39] and Motion for Reconsideration of the Order denying his motion to file electronically [ECF No. 48] be **DENIED as moot**.

---

[10] Furthermore, the petitioner may not earn credits for any evidence-based recidivism reduction program that he successfully completed prior to the date of the enactment of the FSA. 18 U.S.C. § 3632(d)(4)(B)(i). Therefore, to the extent that the petitioner may be seeking time credits for any programs completed prior to December 21, 2018, the same would be clearly misguided.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days (filing of objections) from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

 Further, the Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner via certified mail, return receipt requested, to his last known address as reflected on the docket, and to transmit a copy electronically to all counsel of record.

Finally, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: September 17, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE